## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

        Plaintiff,

v.                          CRIMINAL ACTION NO. 1:18-cv-00317

RYAN RUSSELL PARKS,

        Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before the Court are the following motions filed by Defendant Ryan Parks ("Defendant"):   Motion for Disclosure of Rule 404 and 609 Evidence, (ECF No. 26), Motion to Suppress Tangible and Derivative Evidence from the Search Warrants, (ECF No. 49), Motion for Severance, (ECF No. 51), and Motion to Suppress Tangible and Derivative Evidence from the Arrest Warrant, (ECF No. 63).   For the reasons discussed herein, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion for Disclosure of Rule 404 and 609 Evidence, (ECF No. 26), and **DENIES** Defendants' other motions.   (ECF Nos. 49, 51, 63.)

### I.     BACKGROUND

Defendant is named in a four-count superseding indictment charging him with three counts of Sex Trafficking of a Minor in violation of 18 U.S.C. § 1591(a), (b)(2), and (c) and one count of Use of Interstate Facilities to Promote an Enterprise Involving a Prostitution Offense in violation of 18 U.S.C. § 1594(d).   (ECF No. 43.)   The following facts were derived from Defendant's briefs and testimony adduced during the June 26, 2019 pretrial motions hearing.

On November 21, 2017, Baltimore County, Maryland law enforcement officers responded to a report that a missing juvenile, A.Z., was located at a hotel in Baltimore County.   (ECF No. 49-1 at 2.)   Officers recovered A.Z. and placed her in a juvenile facility.   (*Id.*)   Maryland State Police Officer Christopher Heid ("Cpl. Heid") and Detective Chad Lettau ("Det. Lettau") then conducted a forensic interview of A.Z., in which she stated that she met Defendant through social media platforms Tagged.com and Facebook, initially only knowing him as "Dineoro," and that he discussed with her making money through prostitution by placing ads on Backpage.com.   (*See id.*)   A.Z. further stated that Defendant arranged for her to come to Baltimore, took pictures of her for prostitution ads, and instructed her on how to communicate with her prostitution "dates."   (*See id.*)   A.Z. alleged that Defendant initially took most of the money she earned from her "dates." (*See id.*)

While Cpl. Heid continued to interview A.Z., Det. Lettau searched Tagged.com and Facebook for the name "Dinero."   Det. Lettau informed Cpl. Heid that he was not able to find anyone on Tagged.com with that name.   Det. Lettau continued to search Facebook for the name "Dinero" and eventually discovered Defendant's Facebook profile page.   Det. Lettau showed the profile picture from Defendant's page to A.Z. and she identified the man in the picture as "Dinero."[1]

On December 18, 2017, a Baltimore County Court Commissioner issued an arrest warrant for Defendant for Human Trafficking and various prostitution offenses.   (*Id.* at 2–3.)   On January

---

[1] The facts in this paragraph are derived from the testimony of Det. Lettau during the pretrial motions hearing held on June 26, 2019.   Defendant did not appear to dispute these facts in the hearing, but instead disputes the constitutionality of this identification procedure.   However, that is the subject of a motion not before the Court for this Memorandum Opinion and Order.

10, 2018, Maryland State Police arrested Defendant and seized his cell phone, which was on his person at the time of his arrest.   (*Id.* at 3.)

Following their interview with A.Z., officers interviewed another witness, Y.J., who was currently in the custody of Baltimore County Department of Corrections.   (*Id.*)   Y.J. stated that Defendant was a pimp who had females working for him as prostitutes.   (*See id.*)   She also identified A.Z. from the Backpage.com ads.   (*Id.*)

Defendant was subsequently indicted in federal court and his state charges were dismissed. (*See* ECF No. 53 at 10.)   Following the state charge dismissal, Cpl. Heid and FBI Special Agent Patrick Winn took Defendant into federal custody.   (*See id.*)

## II.     LEGAL STANDARD

"The burden of proof is on the party who seeks to suppress the evidence."   *United States v. Hunter*, 63 F. Supp. 3d 614, 619 (E.D. Va. 2104) (citing *United States v. Dickerson*, 655 F.2d 559, 561 (4th Cir. 1981)).   If the defendant provides a basis for the motion to suppress, the burden shifts to the prosecution to prove the challenged evidence's admissibility by a preponderance of the evidence.   *See id.*; *see also United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974).   During a pretrial hearing on a motion to suppress, "the credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge."   *Hunter*, 63 F. Supp. 3d at 619 (quoting *United States v. McKneely*, 6 F.3d 1447, 1452–53 (10th Cir. 1993)) (internal citation omitted); *see also Columbus-Am. Disc. Grp. v. Atl. Mut. Ins. Co.*, 56 F.3d 556, 567 (4th Cir. 1995) ("[I]n the usual case, the factfinder is in a better position to make judgments about the reliability of some forms of evidence than a reviewing body acting solely on the basis of a written record of

that evidence.   Evaluation of the credibility of a live witness is the most obvious example."

(quoting *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508

U.S. 602, 623 (1993))).

## III.    DISCUSSION

### A. *404(b) Evidence*

Defendant requests that the Court enter an Order directing the Government to disclose its

intention to use any evidence of crimes, wrongs or acts allegedly committed by Defendant and/or

any unindicted co-conspirator, or any other information under Federal Rule of Evidence 404(b) or

609.   (ECF No. 26.)   In response, the Government moves to admit the following evidence under

Rule 404(b):

> (1) That the defendant had sexual intercourse with minors under the age of 18; (2)
> that the defendant obstructed justice by telling a minor victim to delete evidence on
> her phone, attempting to remove or conceal the "chip" within the phone, and
> attempting to destroy the phone by banging it hard enough to damage the device;
> (3) that the defendant physically assaulted Y.J. and had a No-Contact order against
> him at the time he trafficked Y.J.; (4) that the defendant committed other,
> uncharged sex trafficking crimes, including trafficking Y.J. in the months before
> his prostitution enterprise began in February of 2017 and that another victim of his,
> A.T., was a minor at the time he trafficked her; and (5) that the defendant regularly
> provided marijuana to, and smoked marijuana with, the victims working for him in
> his prostitution enterprise.

(ECF No. 53 at 16–17.)   In reply, Defendants seeks to exclude this evidence.   (ECF No. 62 at 1–

6.)

Federal Rule of Evidence 404(b) provides the following:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character
> of a person in order to show action in conformity therewith.   It may, however, be
> admissible for other purposes, such as proof of motive, opportunity, intent,
> preparation, plan, knowledge, identity, or absence of mistake or accident.

4

Rule 404(b) is "an 'inclusionary rule' which 'admits all evidence of other crimes relevant to an issue in a trial except that which tends to prove only criminal disposition.'" *United States v. Mark*, 943 F.2d 444, 447 (4th Cir. 1991) (quoting *United States v. Masters*, 622 F.2d 83, 85 (4th Cir. 1980))). "To be admissible under Rule 404(b), prior bad acts evidence . . . must be relevant to an issue other than character, . . . necessary to prove an element of the crime charged, . . . [and] reliable." *United States v. Blauvelt*, 638 F.3d 281, 292 (4th Cir. 2011). Further, the "probative value [of the evidence] must not be substantially outweighed by its prejudicial nature." *Id.*; *see also* Fed. R. Crim. P. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . prejudice . . . ."). The Court will address each piece of evidence the Government seeks to admit separately.

1. Defendant's Sexual Contact with Minors

As stated above, the Government seeks to admit evidence that Defendant had sex with at least two of the minor victims, A.Z. and S.W. The Government argues that this evidence is intrinsic to its case-in-chief, is intertwined with the charges, and is therefore outside of the scope of 404(b). (ECF No. 53 at 20.) The Government further argues that this evidence is admissible under 404(b) as it is probative of Defendant's knowledge that the victims were underage as he had a reasonable opportunity to observe them unclothed. (*See id.* at 21.)

"Evidence of uncharged conduct is intrinsic to the charged offense and not barred by Rule 404(b) if it 'arose out of the same series of transactions as the charged offense, or if [it] is necessary to complete the story of the crime on trial.'" *United States v. Siegel*, 536 F.3d 306, 316 (4th Cir. 2008) (internal quotation marks and alteration omitted). Evidence is also intrinsic if it is "necessary to provide context relevant to the criminal charges." *United States v. Basham*, 561

F.3d 302, 326 (4th Cir. 2009).   Intrinsic evidence must also satisfy the balancing test of Rule 403 and, thus, its probative value must not be substantial outweighed by the danger of its prejudicial effect.   *See id.* at 329.

Here, evidence that Defendant had sex with the minor victims is intrinsic to the three counts of sex trafficking.   In order to prove these counts, the Government must prove that Defendant "knowing and with reckless disregard of the fact that" the victims were under the age of 18 caused them to engage in commercial sex acts.   Evidence that Defendant had sex with the minor victims is probative of whether Defendant knew or was in reckless disregard of the fact that the victims were under the age of 18, as he would have had ample opportunity to observe the victims intimately.   Thus, this evidence is "necessary" and "relevant" to an element of the offense—knowledge that the victims were underage.

As to its prejudicial effect, the evidence of Defendant having sex with the minors is no more "sensational or disturbing" than the sex trafficking crimes with which Defendant is charged—enticing minors to leave home and engage in commercial sex acts with strangers. Thus, this evidence is not barred by Rule 403's balancing test.   *See United States v. Byers*, 649 F.3d 197, 210 (4th Cir. 2011) ("Generally speaking, 'bad acts' evidence, admissible under Rule 404, is not barred by Rule 403 where such evidence 'did not involve conduct any more sensational or disturbing than the crimes with which [the defendant] was charged.'" (quoting *United States v. Boyd*, 53 F.3d 631, 637 (4th Cir. 1995))).   Further, the Court does not find this evidence overly cumulative so as to be unnecessary as the other evidence offered to prove Defendant's knowledge is not of the same caliber as the present evidence.   Accordingly, the Government is allowed to introduce evidence that Defendant had sex with the minor victims.

2.  <u>Attempted Destruction of the Cell Phone</u>

The Government seeks to introduce evidence that, upon finding that A.Z. had contacted her social worker, Defendant allegedly attempted to delete evidence from A.Z.'s cellphone, remove the "chip" from inside the phone, and damage the phone by beating it on a table causing it to crack.   (ECF No. 53 at 22.)   The Government further alleges that Defendant told A.Z. that the police could not track her without the chip in her phone.   (*See id.*)   The Government argues that this evidence is intrinsic to the sex trafficking crime.   (*See id.*)

If the sequence of events reported by A.Z. is true, and Defendant does not argue it is not, it is reasonable to conclude that Defendant, at the very least, was attempting to cover his trafficking of A.Z.   Thus, this evidence is admissible as intrinsic evidence as it was committed in furtherance of the crime.   *See United States v. Janati*, 374 F.3d 263, 270 (4th Cir. 2004) ("[T]he government is permitted to present evidence of acts committed in furtherance of the conspiracy even though they are not all specifically described in the indictment.").   It is further probative of Defendant's consciousness of his guilt.   *See, e.g.*, *United States v. Berardi*, 675 F.2d 894, 900 (7th Cir. 1982) (finding that evidence of obstruction counts established consciousness of guilt of the other counts and thus would be admissible in the trials of the other counts if the counts were severed).

Defendant argues that his actions cannot fairly be construed as obstructing justice. However, the Court does not find this argument persuasive.   Defendant has not offered any other logical conclusion as to how these events should be perceived, especially in light of the Defendant's alleged statement regarding the chip being needed to track A.Z.'s whereabouts. Additionally, although Defendant summarily states this evidence is overly prejudicial, again, it is no more sensational than the crime he is charged with.   *See, e.g.*, *Untied States v. Wysinger*, No.

5:17-cr-00022, 2018 WL 4956515, at *5 (W.D. Va. Oct. 12, 2018) (finding that evidence that the defendant threatened victims who worked as a prostitute for him was no more prejudicial than what the jury would already see or hear regarding the underlying crime of sex trafficking). Accordingly, the Court will allow the introduction of the evidence that Defendant attempted to destroy A.Z.'s cellphone.

> 3.  Physical Assault of and No-Contact Order with Y.J.

The Government seeks to introduce evidence that Defendant physically assaulted Y.J. and was subsequently charged with First Degree Assault and issued a No-Contact Order.  (*See* ECF No. 53 at 24.)   It further seeks to offer evidence that Defendant violated this No-Contact Order by allegedly advertising Y.J. for commercial sex on the Internet, enlisting her to train the trafficked minors, and harboring her and others in hotel rooms as part of his alleged prostitution enterprise. (*See id.*)   The Government argues that this evidence adds necessary context and background information to Defendant's relationship with Y.J. and a statement Y.J. made to Cpl. Heid.   (*See id.*)

The Court finds that this evidence is not admissible under Rule 404(b).   First, this evidence is not intrinsic to the crime.   *See Wysinger*, 2018 WL 4956515, at *4 ("With regard to threats made to persons outside the conspiracy and which were unknown to any victims of the conspiracy, those threats likely would not be intrinsic.").   Additionally, this evidence does not relate to the underlying charged sex trafficking offenses, nor is it probative of how Defendant operated his alleged prostitution enterprise.   *Compare* the present case *with Wysinger*, 2018 WL 4956515, at *4 (finding that the defendant's threatening of a non-victim was admissible to show the climate of fear that defendant created to force the victims into working as prostitutes for him).   As this

evidence is not related to the underlying offenses, there is a greater danger that the jury will use this for propensity purposes, and not for its intended goal of adding context to Y.J.'s statements. Thus, this evidence would be more prejudicial than probative and should be excluded under Rule 403.   Accordingly, the Court will exclude evidence that Defendant was physically violent with Y.J. and that he had a No-Contact Order with Y.J.

      4.   <u>Other Uncharged Sex Trafficking Offenses</u>

      The Government seeks to admit evidence that Defendant was involved in other sex trafficking activities in the months preceding his February 2017 prostitution enterprise, including the trafficking of Y.J. and another minor, A.T., during the summer of 2017.   (*See* ECF No. 53 at 26–27.)   The Government argues that this evidence goes to Defendant's plan and knowledge in the instant case as the conduct is substantially the same as the charged acts.   (*See id.* at 28.)

      Evidence that Defendant trafficked A.T. is admissible under Rule 404(b).   Although the Government has not provided evidence detailing Defendant's trafficking of A.T., it represents to the Court that the trafficking of A.T. was similar to the trafficking of the present minor victims. Further, the alleged trafficking of A.T. occurred during the time frame of the superseding indictment.   As such, the evidence is highly probative of Defendant's knowledge, intent, and plan. *See Wysinger*, 2018 WL 4956515, at *5 (finding that the defendant's uncharged recruitment of other women to prostitute was not direct evidence but was admissible under 404(b) to show intent, lack of mistake, and *modus operandi* where the defendant was charged with sex trafficking minors); *see also United States v. Gray-Sommerville*, 618 F. App'x 165, 170 (4th Cir. 2015) (finding that the district court did not abuse its discretion in admitting evidence that the defendant transported another minor for prostitution three months prior to the charged offense as it was highly

probative of the defendant's mental state).   As this evidence is similar to the charged offenses, its probative value is not substantially outweighed by the risk of unfair prejudice or confusing the jury.   *See Wysinger*, 2018 WL 4956515, at *5; *see also Gray-Sommerville*, 618 F. App'x, at 170. Further, the Defendant has not raised any question regarding this evidence's reliability nor does he argue that it is overly cumulative.   Accordingly, the Court will allow the Government to introduce evidence that Defendant trafficked A.T.

However, evidence that Defendant trafficked Y.J. is not admissible under Rule 404(b). Y.J. was not a minor during the time that Defendant allegedly trafficked her and, thus, this evidence is not probative of Defendant's motive, opportunity, intent, knowledge, absence of mistake, or plan as to the underlying charged offenses of trafficking minors.   *See, e.g.*, *United States v. Willoughby*, 742 F.3d 229, 237 (6th Cir. 2014) (finding that evidence that the defendant was a pimp to an uncharged, non-minor victim was not admissible to show a common span as the methodology was not distinctive enough); *see also United States v. Jackson*, 299 F.R.D. 543, 545 (D. Mich. 2014) ("The indictment in this case is confined to Defendant's sex trafficking of three Minors, not a broader sex-trafficking operation.   Evidence that Defendant had other prostitutes working for him, and how he managed them is not inextricably intertwined with the charges in this case unless Defendant somehow puts the issue into contention.").   Further, this evidence would be more prejudicial than probative.   *See Jackson*, 299 F.R.D. at 545–46 (excluding the use of evidence of other prostitutes to show a broader sex trafficking operation or for the purposes to corroborating the testimony of the minor victims).   Evidence that Defendant trafficked the three minor victims and A.T. is ample to highlight Defendant's common plan.   *See Willoughby*, 742 F.3d at 238.   Accordingly, the Court will exclude evidence that Defendant trafficked Y.J.

5.  Defendant's Use of Marijuana

Lastly, the Government seeks to introduce evidence that Defendant provided marijuana to the victims to show that Defendant allegedly used the substances to entice, manage, and subdue the victim as part of the underlying prostitution enterprise.   The Government further argues that this evidence provides context to the Defendant's conduct towards and relationship with the victims.   This evidence, insofar as it relates to Defendant's behavior towards the victims, "is inextricably intertwined with the charged offense" as it is probative of how Defendant recruited, interacted, and controlled the minors.   *See Jackson*, 299 F.R.D. at 545; s*ee also United States v. Parks*, 902 F.3d 05, 814 (8th Cir. 2018) ("The probative value of the evidence accordingly outweighed the danger of potential prejudice because it showed Parks's intent to solicit, entice, and maintain these women so that they would engage in commercial sex acts.   The district court did not abuse its discretion in admitting evidence regarding Parks's solicitation of sex from S.L. or T.S. or his providing drugs to the young women.").   It further is not any more sensational than the underlying offenses, and thus is not prejudicial.

B.  *Motion to Sever*

Defendant argues that that Count One through Three of the superseding indictment were improperly joined and, even if the Court finds they were properly joined, they should be severed as to not prejudice Defendant.   (*See* ECF No. at 51 at 1–2.)   Specifically, Defendant argues that if the counts are tried together the jury may conclude that if Defendant is guilty of one count, then he is guilty of the others.   (*See id.* at 2.)   Defendant further argues that he may wish to testify in connection with one offense and not the others, and thus joinder of the counts will impede his right to testify.   (*See id.* at 2.)

Under Federal Rule of Criminal Procedure 8(a), a defendant may be charged with multiple offenses in separate counts of a single indictment if "[1] the offenses charged . . . are of the same or similar character, . . . [2] are based on the same act or transaction, or [3] are connected with or constitute parts of a common scheme or plan."   The Fourth Circuit has stated that "very broad joinder" is permitted under Rule 8(a) "because of the efficiency in trying the defendant on related counts in the same trial."   *United States v. Cardwell*, 433 F.3d 378, 385 (4th Cir. 2005).   Thus, "joinder is the rule rather than the exception."   *Id.*   However, even if offenses are properly joined under Rule 8(a), a court may order separate trials "if the joinder of offenses. . . appears to prejudice a defendant or the Government."   Fed. R. Crim. P. 14.   "The defendant bears the burden of showing that a joint trial would be so unfairly prejudicial that a miscarriage of justice would result."   *United States v. Williams*, 10 F.3d 1070, 1080 (4th Cir. 1993).

Here, Counts One through Three of the Superseding Indictment charge Defendant with Sex Trafficking of a Minor, with respect to three different minor victims during three time frames, all within a year.   (*See* ECF No. 43.)   All three Counts charge Defendant with recruiting, enticing, transporting, advertising, and maintaining a minor victim for the purposes of that victim engaging in commercial sex acts from which Defendant financially benefited.   (*See id.* at 2–5.)   The superseding indictment further describes the conduct alleged in each count as part of a sex trafficking enterprise.   (*See id.* at 2.)   Thus, the Counts are of "similar character" and "constitute part of a similar scheme or plan."   *See, e.g.*, *United States v. Branch*, 537 F.3d 328, 348 (4th Cir. 2008) (affirming a district court denial of a motion to sever three counts of distributing cocaine because each of the distribution counts were so related).   Accordingly, Counts One through Three of the Superseding Indictment were properly joined.

Having found that Counts One through Three were properly joined, the burden is on Defendant to show that he will suffer prejudice if these counts are not severed. *See United States v. Elshinawy*, 228 F. Supp. 3d 520, 541 (D. Md. 2016) (citing *United States v. Blair*, 661 F.3d 755, 770 (4th Cir. 2011)). The Fourth Circuit has identified the following "three sources of prejudice" that may justify severance:

> 1) The jury may confuse and cumulate the evidence and convict the defendant of one or both crimes when it would not convict him of either if they could keep the evidence properly segregated; 2) the defendant may be confounded in presenting defenses. For example, in one case he might desire to assert his privilege against self-incrimination but not in the other; or 3) the jury may conclude that the defendant is guilty of one crime and then find him guilty of the other because of his criminal disposition.

*Id.* at 542 (citing *United States v. Goldman*, 650 F.2d 1221, 1224 (4th Cir. 1984)). Courts should also consider "whether, if there were a severance, evidence under one of the severed counts would in all probability be admissible at a trial on the other count, pursuant to Rule 404(b) of the Federal Rules of Evidence." *Id.* (citing *Goldman*, 650 F.2d at 1225). A defendant must present enough information "regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other" so that the Court can properly assess whether there is prejudice. *See Goldman*, 650 F.2d at 1225.

Here, Defendant is far from meeting his burden. Defendant simply argues that he will suffer prejudice if Counts One through Three are not severed because of the danger that the jury may convict Defendant on all three counts if they find that he is guilty of one. (*See* ECF No. 51 at 2.) However, the Court does not find this argument persuasive as it is well established in this Circuit that "[s]everance is not appropriate merely because it might improve the defendant's chances for an acquittal. *Elshinawy*, 228 F. Supp. 3d at 542 (citing *Blair*, 661 F.3d at 770; *United*

*States v. Lighty*, 616 F.3d 321, 348 (4th Cir. 2010); *United States v. Reavis*, 48 F.3d 763, 767 (4th Cir. 1995); *Goldman*, 750 F.2d at 1225).   Cautionary instructions will help prevent jury confusion and limit the risk of the jury convicting Defendant on all counts simply because it believed he was guilty of at least one count.  *See United States v. Cohen*, No. 14-cr-310, 2015 WL 2261661, at *28 (D. Md. May 7, 2015); *see also Zafiro v. United States*, 506 U.S. 534, 539 (1993) (recognizing "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice" and thus permit denying severance.)   Additionally, even if the Court were to sever the counts, it is likely that evidence regarding one victim may be admissible at trial for the other victims.  *See United States v. Miserendino*, 283 F. Supp. 3d 489, 495 (E.D. Va. 2017) (quoting *United States v. Foutz*, 540 F.2d 733, 737 (4th Cir. 1976)) (finding that because the counts constituted parts of a common scheme or plan, "evidence of one Count 'would ordinarily be admissible at a separate trial for the other.'").

Further, Defendant has not shown that his defense would be impeded by joinder.   As stated above, Defendant must present enough information "regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other" so that the Court can properly assess whether there is prejudice.   *See Goldman*, 650 F.2d at 1225. Defendant simply states that he may wish to testify as to one count and not the others.   This is not enough to warrant severance.  *See Elshinawy*, 228 F. Supp. 3d at 542.   As such, the Court **DENIES** Defendant's motion for severance.

C.  *Motion to Suppress Physical Evidence from Search and Arrest Warrants*

Defendant seeks to suppress the physical and tangible evidence seized pursuant to an arrest warrant and search warrants, arguing that they lacked probable cause.   (*See* ECF Nos. 49, 63.) Defendant further requests a *Franks* hearing on both issues.   (*See* ECF No. 49.)

Under the Supreme Court's ruling in *Franks v. Delaware*, "an accused is entitled to an evidentiary hearing on the veracity of statements" in a warrant affidavit if the accused has made a "substantial preliminary showing that false statements were either knowingly or recklessly included in an affidavit" and "that, without those false statements, the affidavit cannot support a probable cause finding."   *United States v. Allen*, 631 F.3d 164, 171 (4th Cir. 2011) (citing *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978)).   Thus, "a Franks hearing is warranted if:   (1) the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in a warrant affidavit, and (2) the defendant shows that the false information was essential to the probable cause determination."   *See United States v. Blake*, No. 06-cr-0394, 2012 WL 78754, at *4 (D. Md. Jan. 10, 2012) (citing *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir.1990); *Simmons v. Poe*, 47 F.3d 1370, 1383 (4th Cir.1995)).

A Franks hearing can also be warranted if an affiant omits material facts from an affidavit. *See id.*   "For an omission to serve as a basis for a hearing under *Franks*, it must be such that its inclusion in the affidavit would defeat probable cause for arrest.   Omitted information that is potentially relevant but not dispositive is not enough to warrant a Franks hearing."   *See Blake*, 2012 WL 78754, at *4 (citing *Colkley*, 899 F.2d at 301).   As to the second prong of *Franks*, with regard to omissions, a defendant bears an even higher burden of making a "substantial showing that facts were omitted in order to mislead or with reckless disregard for an omission's misleading

15

nature." *United States v. Crittenden*, 716 F. App'x 142, 146 (4th Cir. 2017) (citing *United States v. Tate*, 524 F.3d 449, 454 (4th Cir. 2008)).

1. Arrest Warrant

As stated above, Defendant argues that his arrest warrant was issued without probable cause.   (*See* ECF No. 63 at 2.)   Further, at the hearing on June 26, 2019, Defendant requested a *Franks* hearing on the arrest warrant, arguing that the omittance of A.Z.'s prior inconsistent statement in which she initially denied being involved in any commercial sex scheme was material to a finding of probable cause to arrest Defendant.

"'[P]robable cause to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed . . . an offense." *United States v. Dickey-Bey*, 393 F.3d 449, 453 (4th Cir. 2004) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)).   Probable cause is analyzed under a totality of the circumstances and deference is given "to the expertise and experience of law enforcement officers at the scene."   *See id.*

The Application for Statement of Charges attached to the arrest warrant provides, in part, the following:

> A.Z. met defendant on the Tagged app.   A.Z. knows the defendant as "Dinero."
> She told Dinero that she was 17.   Dinero asked her to come and meet him at his
> house in Baltimore.   A.Z. was able to get a ride to Dinero's house, which she
> positively identified by a photo. . . .   Once at his house, she stated that he talked to
> her about making prostitution dates on [B]ackpage.com.
>
> He brought her to the Knights Inn . . . .   Dinero took photos of her to put on
> [B]ackpage.com.   I know through my training, knowledge, and experience that
> [B]ackpage.com is a website used for prostitution.   A.Z. believes that she made 20
> dates during the 6 days that she was there.   . . .   A.Z. also received "instructions"
> from Dinero on what to say to the dates when they were called.   She was
> specifically told to ask them if they were affiliated with law enforcement.   He told

16

her he expected three things from her:   answer calls, be respectful, and be loyal to
him.   Dinero provided her with condoms and held all money that was made from
the dates.

(*See id.*)   The affiant further provides that A.Z. stated that the Defendant had sex with her several

times.   (*See id.*)   The Application for Statement of Charges includes A.Z.'s identification of

Defendant from his Facebook profile page under the name "Dinero Lme."   The affiant

corroborated this identification through an additional photo on the "Dinero Lme" profile page

which displayed a Maryland Learner's Permit in the name of Defendant.   (*See id.*)   Further,

A.Z.'s prostitution ads on Backpage.com were associated with an email address belonging to

Defendant.   (*See id.*)

The above information is sufficient to establish probable cause to arrest Defendant.[2]   The

warrant provides a statement from a minor victim detailing behavior by Defendant towards her

that, based on the affiant's knowledge, training, and experience, is consistent with an illegal

commercial sex business, and, at the very least, unlawful sex with a minor.   The affidavit plainly

demonstrates that Defendant enticed A.Z., who informed Defendant she was a minor, through the

internet to travel to Baltimore to engage in commercial sex work.   The affiant further provides the

victim's identification of Defendant which is corroborated by evidence from Defendant's

Facebook profile page and the email address used to post the prostitution ads from Backpage.com.

Thus, a reasonably prudent person could conclude that Defendant had committed, at the very least,

---

[2] In order to convict a defendant under 18 U.S.C. § 1591(a)(1), the Government must prove that a defendant did the
following:   "(1) knowingly recruited, transported, harbored, maintained, obtained, or enticed a person, (2) in or
affecting interstate commerce, (3) knowing or in reckless disregard of the fact that the victim had not attained the age
of eighteen years and would be made to engage in a commercial sex act."   *United States v. Chapman*, 589 F. App'x
159, 160 (4th Cir. 2015) (citing *United States v. Garcia-Gonzalez*, 714 F.3d 306, 312 (5th Cir. 2013)).   "In a
prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the person so
recruited, enticed, harbored, transported, provided, obtained or maintained, the Government need not prove that the
defendant knew that the person had not attained the age of 18 years."   18 U.S.C. § 1591(c).

the offense of sex trafficking.   Having found that the arrest warrant contained sufficient probable cause to arrest Defendant, any evidence obtained as a search incident to the arrest was lawfully obtained.  *See United States v. Robinson*, 414 U.S. 218, 224 (1973) ("It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment.").

Further, even if the Court found that the arrest warrant fell shy of establishing probable cause, the evidence stemming from the arrest warrant would still be admissible as officers relied in good faith on the warrant.  *See United States v. Leon*, 468 U.S. 897, 913 (1984); *see also United States v. Perez*, 393 F.3d 457, 461 (4th Cir.2004) (stating the good faith exception under Leon allows evidence obtained from an invalid warrant to still be admissible if an officer's reliance on the warrant was objectively reasonable).   The warrant contains extensive facts regarding Defendant and the suspected offense and is thus not facially deficient such that officers could not have relied in good faith on it.  *See id.* at 923 (noting that an officer's reliance on a warrant would not be objectively reasonable if the warrant was facially deficient); *see also United States v. Laury*, 985 F.2d 1293, 1311 n.23 (5th Cir. 1993) (defining "bare bones affidavit" as one that contains "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause").

As to Defendant's request for a *Franks* hearing, as stated above, Defendant must show that the omission was material and that this omission was done to mislead or with reckless disregard of its misleading nature.   Defendant has failed to make either showing.   First, Defendant has not made any showing that the affiant omitted A.Z.'s prior statement for the purpose of misleading the neutral magistrate or with reckless disregard that it would be misleading.

18

Further, the omission of A.Z.'s initial denial is not material as its inclusion was not necessary to a finding of probable cause. It is not surprising that A.Z. initially denied being involved in a commercial sex scheme as it is a crime. *See Blake*, 2012 WL 78754, at *5) ("There is certainly nothing remarkable about the fact that Tolbert initially denied any involvement in this very serious crime when first approached by the police. . . .). Additionally, even if this prior inconsistent statement were included in the Application for Statement of Charges, A.Z.'s second statement which is detailed in the Application for Statement of Charges provides extensive facts that are corroborated by the evidence garnered from Defendant's social media accounts. Thus, the magistrate had sufficient, reliable facts to make a probable cause determination. Accordingly, Defendant is not entitled to a *Franks* hearing on the arrest warrant.

2. <u>Search Warrant</u>

Defendant also seeks to suppress evidence of his Facebook account, Tagged.com account, Yahoo email account, and iPhone 8, arguing that the search warrants were void of probable cause. (*See* ECF No. 49-1 at 2.) Defendant further requests a *Franks* hearing and argues that the following allegedly material information was excluded from the search warrant affidavits: A.Z.'s prior inconsistent statement, that Y.J. was interviewed in a detention center, and the reason for Y.J.'s detention. (*See id.* at 3–5.)

The Fourth Amendment requires that, barring the established exceptions, searches "be conducted pursuant to a warrant issued by an independent judicial officer." *California v. Carney*, 471 U.S. 386, 390 (1985). "In determining whether a search warrant is supported by probable cause, the crucial element is not whether the target of the search is suspected of a crime, but whether it is reasonable to believe that the items to be seized will be found in the place to be

searched."   *United States v. Lalor*, 996 F.2d 1578, 1582 (4th Cir. 1993) (citing *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 & n.6 (1978)).   A court "must look to all the facts and circumstances of the case, including the nature of the unlawful activity alleged, the length of the activity, and the nature of the property to be seized."   *United States v. Farmer*, 370 F.3d 435, 439 (4th Cir. 2004) (quoting *United States v. Rhynes,* 196 F.3d 207, 234 (4th Cir. 1999)).   "In assessing probable cause, this Court must afford great deference to the initial judicial officer's determination." *United States v. Henry*, 673 F.3d 285, 289–90 (4th Cir. 2012).

        Here, the search warrant affidavit is extensive.   It contains statements from two minor victims, A.Z. and A.T., in which they state that Defendant recruited and advertised them on the Internet for commercial sex.   (*See* ECF No. 53-1 at 65–74.)   These statements are corroborated in the affidavit by social media accounts and Internet ads connected to Defendant.   (*See id.* at 69– 70,72–74.)   The affidavit further clearly details, based on the affiant's experience and the above already discovered evidence, why evidence regarding the underlying sex trafficking offenses[3] would be found on Defendant's phone and other electronic accounts.   Specifically, the affiant provides facts demonstrating that Defendant used his social media accounts to lure the minor victims to Baltimore and post prostitution ads for the minor victims so that they could engage in commercial sex acts.   Accordingly, the Court finds that the search warrant affidavit contains sufficient probable cause to reasonably believe that evidence of Defendant's sex trafficking of the minors would be found on the requested devices.   Additionally, even if the Court found that the search warrants did not contain sufficient probable cause, the officers relied on them in good faith as they are far from being bare bones.   *See Leon*, 468 U.S. at 913; *see also Perez*, 393 F.3d at 461.

---

[3] The Court noted the elements for sex trafficking in its previous footnote.

Further, Defendant has not made a sufficient showing as to the two prongs to entitle him to a *Franks* hearing.   First, as with the arrest warrant, Defendant has not made any showing that they were omitted in order to mislead or with reckless disregard of their misleading nature.   Further, none of the omissions are material to a finding of probable cause.   A.Z.'s prior inconsistent statement does not undermine probable cause in light of her second statement included in the search warrant affidavit which provides sufficient, corroborated information regarding Defendant and his use of the Internet to traffic the minors.   Additionally, the search warrant affidavit does state that Y.J. was in custody at the time of the interview.   (*See* ECF No. 53-1 at 67.)   Lastly, the Court does not find persuasive Defendant's argument that the fact that Y.J. was in custody for violating her probation stemming from a charge involving Defendant affects her reliability and thus is material to a finding of probable cause.   Y.J.'s statement in the affidavit matches A.Z., which in turn is corroborated by evidence from Defendant's social media accounts.   Further, there is other information in the affidavit, such as Y.J. being in custody and her admittance to working in prostitution with Defendant, available to the magistrate to use to assess Y.J.'s reliability.   *See Blake*, 2012 WL 78754, at *5.   Accordingly, Defendant is not entitled to a *Franks* hearing on the search warrants.

## *IV.    CONCLUSION*

For the reasons discussed more fully above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion for Disclosure of Rule 404 and 609 Evidence.   (ECF No. 26.)   The Court further **DENIES** Defendant's Motion to Suppress Tangible and Derivative Evidence from the Search Warrant, (ECF No. 49), Motion for Severance, (ECF No. 51), and Motion to Suppress Tangible and Derivative Evidence from the Arrest Warrant, (ECF No. 63).

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER:          July 3, 2019

THOMAS E. JOHNSTON, CHIEF JUDGE